1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | MARK GELAZELA, | ) Case No.: 1:21-cv-01499 JLT EPG |
| 12 | Plaintiff, | ) ORDER ADOPTING IN FULL THE FINDINGS AND RECOMMENDATIONS, DENYING |
| 13 | v. | ) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING THE GOVERNMENT'S |
| 14 | UNITED STATES OF AMERICA, et. al., | ) MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT MOORE'S MOTION |
| 15 | Defendants. | ) FOR SUMMARY JUDGMENT, AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE |
| 16 | | ) |
| 17 | | ) (Docs. 45, 48, 48, and 63) |

18        Mark Gelazela seeks to hold the defendants liable for violations of his rights while he was in

19   custody at Mendota FCI.  Plaintiff alleges that he was remanded into custody six weeks after a knee

20   surgery, when he was "fresh off crutches and wearing a full metal leg-brace to lock his knee in place."

21   (Doc. 13 at 5.)  The action is proceeding on the following claims: (1) against Thomas Moore, M.D.,

22   for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and (2)

23   against the Government under the Federal Tort Claims Act based upon the treatment Plaintiff received

24   (or failed to receive) for his knee.  (Docs. 13, 24.)  Plaintiff moved for summary judgment pursuant to

25   Rule 56 of the Federal Rules of Civil Procedure.  (Doc. 45.)  Moore and the Government filed cross-

26   motions for summary judgment.  (Docs. 48, 58.)  For the reasons set forth below, the Court adopts the

27   Findings and Recommendations and directs entry of judgment in favor of Defendants.

28   ///

1

**I.      Findings and Recommendations**

As an initial matter, the magistrate judge noted Plaintiff filed surreplies to both motions for summary judgment.  (Doc. 63 at 7, citing Docs. 55, 62.)  The magistrate judge observed that Plaintiff did not obtain leave of court for the filings, and "[n]either the Local Rules nor the Federal Rules provide the right to file a surreply." (*Id.*)  The magistrate judge found a valid reason did not exist to support the filing, such as addressing new arguments raised by Defendants in their replies.  (*See id.*, citing *Hill v. England*, 2005 WL 3031136, *1 (E.D. Cal. Nov. 8, 2005).)  Therefore, the magistrate judge declined to consider Plaintiff's surreplies.  (*Id.* at 9.)

**A.      Claim under the Federal Tort Claims Act**

The Government argued in its motion that Plaintiff's claim under the Federal Tort Claims Act was untimely.  (*See* Doc. 48-2 at 1.)  The magistrate judge observed the parties did "not dispute that under 28 U.S.C. § 2401(b), an action needed to be filed within six months of the agency mailing the denial to Plaintiff via certified mail."  (Doc. 63 at 9.)  The magistrate judge observed it was undisputed that the "BOP mailed Plaintiff via certified mail a notice that his claim was denied on March 8, 2021." (*Id.*, citing Doc. 48-4 at 112, 114.)  Thus, the magistrate judge found "Plaintiff had to commence this suit by no later than September 8, 2021." (*Id.*)  Because Plaintiff filed his complaint on October 8, 2021, the magistrate judge found "absent tolling, the FTCA's six- month statute of limitations bars this action."  (*Id.* at 9-10.)

**1.      Tolling under 28 U.S.C. § 2401(a)**

Plaintiff asserts his complaint was timely under Section 2401(a), because he was "legally disabled all throughout his incarceration and still is…." (Doc. 50 at 4.)  The magistrate judge observed the Ninth Circuit determined "the tolling provision of [Section] 2401(a) applies to non-tort—meaning, non-FTCA—claims."  (Doc. 10-11, citing *Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019).) Further, the magistrate judge found that *even if* Section 2401(a) applied to FTCA claims, there was "no evidence that Plaintiff suffers from a legal disability sufficient to toll the statute of limitations period." (*Id.* at 12, citing *United States v. Ioane*, 2019 WL 1332188, at *3 (E.D. Cal. Mar. 25, 2019).)  Thus, the magistrate judge "reject[ed] Plaintiff's arguments that 28 U.S.C. § 2401(a) tolling provision applies to his FTCA claim and applies to Plaintiff because he is physically disabled."  (*Id.*)

2.    Equitable tolling

Plaintiff argued that he is entitled to tolling on the following grounds: (1) "the small disparity in the timeliness difference," because the Government argued his complaint was due September 8, 2021 and he filed it 30 days later; (2) his disability; (3) being in a "'three week' and other full Covid lockdowns;" (4) denial of access to the law library while incarcerated; (5) his status as a *pro se* litigant; and (6) "delays incurred by issues outside of [his] control," such as requiring permission to go to the post office once released to home confinement, as well as obtaining transportation.  (Doc. 50 at 6; *see also id.* 3-5.)  The magistrate judge rejected these assertions and found "Plaintiff failed to make a showing that would entitle him to equitable tolling."  (Doc. 63 at 13; *see also id.* at 12-14.)

3.    Conclusion

The magistrate judge determined that "Plaintiff filed this lawsuit after the FTCA's six- month statute of limitations period, and … [he] is not entitled to equitable tolling."  (Doc. 63 at 14.)  The magistrate judge concluded the FCTA claim is barred and recommended the Government's motion for summary judgment be granted.  (*Id.* at 14-15.)

**B.    Claim for violation of the Eighth Amendment**

Plaintiff asserts Moore violated his Eighth Amendment rights through deliberate indifference to his serious medical needs.  Moore argued the Court should grant summary judgment on the grounds that a damages remedy was not available under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  (*See* Doc. 58-2 at 12-21.)  The magistrate judge observed there is a two-part test for determining whether a remedy is available under *Bevins*: "First, courts must determine whether the plaintiff is seeking a *Bivens* remedy in a new context. If the answer to this question is 'no,' then no further analysis is required. If the answer is 'yes,' then the court must determine whether 'special factors counsel [] hesitation.'"  (Doc. 63 at 16, quoting *Lanuza v. Love*, 899 F.3d 1019, 1021 (9th Cir. 2018).)  Applying this test, the magistrate judge found at the first step that "Plaintiff's Eighth Amendment claim arises within an existing context."  (*Id.* at 18; *see id.* 16-18.)  Therefore, the magistrate judge found damages are available under *Bivens.*  (*Id.*)

Turning to the merits of Plaintiff's Eighth Amendment claim, the magistrate judge noted "the parties do not dispute that Plaintiff had a serious medical need."  (Doc. 63 at 21.)  The magistrate

judge observed Plaintiff asserted Moore exhibited deliberate indifference in the following manners:

1) Moore refused to issue the necessary form for the Plaintiff to receive an additional knee brace;

2) Dr. Moore refused to send the Plaintiff out for an MRI despite the Plaintiff's repeated requests;

3) When Plaintiff was finally sent for an MRI, the setback caused by Dr. Moore directing the MRI to be done on the wrong knee on the authorization request "delayed the Plaintiff's exam just long enough to push his window for surgery outside of the end of his incarceration,"

4) Dr. Moore denied him even anti-inflammatories;

5) Dr. Moore refused to put Plaintiff on limited duty status;

6) Over the course of year and a half, Moore refused to provide Plaintiff with any care for Plaintiff's knee[.]

(Doc. 63 at 21, citing Doc. 45-2 at 2-13, 20; Doc. 13 at 13-14.)  The magistrate judge addressed each of these assertions, and found the evidence did not support a conclusion that Moore was deliberately indifferent.  (*Id.* at 22-30.)

First, although Plaintiff asserted that he was to get a new knee brace "per his surgical doctor's orders," the medical evidence Plaintiff submitted did not show a surgeon ordered Plaintiff to replace his initial knee brace with a different brace after three months.  (Doc. 63 at 23-24.)  Instead, the magistrate judge found the identified letter indicated only that "no brace is needed at all after about six months," and the evidence Plaintiff identified showed he asked "Moore to approve a knee brace 'sent in from family' during his July 2, 2020 visit[], or nearly eight months after the surgery."  (*Id.*)  The magistrate judge observed this was "long past the period of time that Plaintiff was supposed to stop wearing the knee brace altogether."  (*Id.*)  The magistrate judge found "at most, Plaintiff's evidence shows a difference of opinion concerning a course of medical treatment," which was "insufficient, as a matter of law, to establish deliberate indifference."  (*Id.*, quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).)

The magistrate judge also found Plaintiff did not establish deliberate indifference based upon the refusal to send Plaintiff out for an MRI.  (Doc. 63 at 24-26.)  The evidence showed Moore did not send Plaintiff for an MRI during the medical visits on April 2, 2020 and July 2, 2020, but referred Plaintiff for one on February 10, 2021.  (*Id.* at 24-26.)  The magistrate judge observed the evidence

1  established that Moore informed Plaintiff: "due to the coronavirus pandemic, 'inmates were not being

2  transported into the community for routine or non-emergent health issues." (*Id.* at 24-25, quoting Doc.

3  49-2 at 5, 38.)  In addition, the magistrate judge found Plaintiff's own evidence contradicted his claim

4  that "[a]t no time ever" did Moore inform him that treatment could not be obtained due to the

5  pandemic in April 2020.  (*Id.* at 25.)  The magistrate judge observed: "On July 13, 2020 in BP-8 to the

6  Warden, Plaintiff wrote 'Dr. Moore finally responded to one of my sick call requests (around April

7  2nd) to inform me of this appointment (scheduled for April 4th) but, in the same breath, he also

8  informed me that I could not go to the appointment due to the Chinese virus lockdown.'"  (*Id.*, quoting

9  Doc. 45-5 at 10) [modification adopted].)  Similarly, the magistrate judge noted that in September

10  2020, "Plaintiff sent a message to Health Services, 'inquiring about [his] ortho appt that was scheduled

11  on April 4th but then postponed due to covid… Is there any discernable time in the future when I can

12  see an orthologist?'"  (*Id.*, quoting Doc. 45-14 at 16.)  The magistrate judge found the identified delay

13  in an MRI referral—because of the pandemic—was neither arbitrary nor for a "non-medical reason"

14  and "Plaintiff fails to raise a material issue of fact on this issue."  (*Id.* at 26.)

15      Plaintiff also noted that Moore initially referred him for an MRI on the wrong knee, which

16  caused a delay in treatment.  (Doc. 45-2 at 13.)  Moore acknowledged the error, but asserted there was

17  no evidence the delay caused any injury to Plaintiff.  (Doc. 49 at 12.)  Plaintiff asserts this delay was

18  "just long enough to push his window for surgery outside of the end of his incarceration, all of which

19  further damaged his knee and extended his suffering."  (Doc. 45-2 at 13.)  Plaintiff reports that in June

20  2021, an orthopedic surgeon offered a knee arthroscopy but informed Plaintiff the surgery "would not

21  happen for 3 months," by which time Plaintiff would be released.  (*Id.* at 14.)  The magistrate judge

22  found no evidence that Moore "knew that Plaintiff would be released to home confinement soon, knew

23  that home confinement would delay the surgery, and deliberately ordered the scan on the wrong knee to

24  delay the surgery."  (Doc. 63 at 27.)  The magistrate judge found, "At most, ordering an MRI on the

25  wrong knee amounts to negligence or medical malpractice, which will not support deliberate

26  indifference claim."  (*Id.*, citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).)

27      Next, the magistrate judge noted that Plaintiff alleged in his amended complaint that Moore

28  "refused to issue even something as simple as ibuprofen."  (Doc. 63 at 27, quoting Doc. 13 at 5.)  The

5

magistrate judge noted that in seeking summary judgment, Plaintiff indicated the refusal was "de facto, a denial of medicine" because Moore referred Plaintiff to purchase ibuprofen and other-over-the-counter medications from the commissary, but Plaintiff could not afford it.  (Doc. 45-2 at 9-10.)  The magistrate judge found Plaintiff did not present evidence that Moore knew Plaintiff lacked funds to purchase the medication from the commissary, and as a result Plaintiff did not show deliberate indifference.  (Doc. 63 at 28, citing *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985), *Emil v. Crawford*, 125 F. App'x 112, 112-13 (9th Cir. 2005).)  Likewise, the magistrate judge also found the undisputed evidence contradicted Plaintiff's allegation that he received "no care" for his knee, because "the record shows that Plaintiff was seen multiple times by numerous medical staff," and had Plaintiff was both seen by a specialist and had imagining done "[a]s soon as the BOP started sending out inmates again following the COVID outbreak."  (*Id.* at 29.)

Finally, the magistrate judge found Plaintiff's contentions regarding limited duty status and other accommodations, such as a lower bunk, failed to establish deliberate indifference by the physician.  (Doc. 63 at 28-29.)  Therefore, the magistrate judge recommended the Court grant summary judgment to Moore and deny Plaintiff's cross-motion.  (*Id.* at 30.)

## II.    Objections

Plaintiff filed objections to the Findings and Recommendations on August 24, 2024 (Doc. 64), which he amended on September 3, 2024 (Doc. 65).  Plaintiff objects to the magistrate judge declining to consider his surreplies, arguing that "[g]iven that the plaintiff is pro se, he was obviously not fully aware he had to ask permission to submit a 'surreply' and submitted his surreplies because he had waved (sic) court appearances for all three MSJ's given his disability … and because of his present distant locale geographically to the base court given his difficulties traveling."  (Doc. 65 at 3.)  He maintains "both surreplies should be allowed," because the defendants raised new arguments in their opposition that they "knew that the Plaintiff would not have an opportunity to refute … sans a court appearance."  (*Id.* at 4.)

He also objects to the findings regarding the timeliness of his complaint, arguing first that his complaint was actually timely based upon (1) the agency's lack of response to his mailed reply and (2) a letter from the warden.  (Doc. 65 at 1-2.)  Nevertheless, Plaintiff maintains that tolling should apply

because he "was an inmate in COVID lockdown and quarantine for several months." (*Id.* at 2-3; *see also id.* at 7.) He asserts that in considering whether tolling applied under 28 U.S.C. § 2401(a), the magistrate judge "wrongly stat[ed] that the Plaintiff's disability was physical only" because he has "documented and verifiable PTSD in his VA medical records and could have bought this evidence to bear (and would at trial) …." (*Id.* at 5.) Plaintiff maintains his medical issues support equitable tolling. (*Id.* at 9.)

Plaintiff also argues the magistrate judge erred in addressing the merits of his Eighth Amendment claim. (Doc. 65 at 9-21.) For example, Plaintiff asserts the denial of a knee brace from a family member—which he states Moore denied "because it had a small amount of metal in it"—shows Moore was deliberately indifferent to his medical need. (*Id.* at 9-10.) He also contends he was "verbally" told by the surgeon to use the second brace that he wanted family members to send, "and the surgeon would testify to this at trial." (*Id.* at 12.) Further, Plaintiff argues the denial of anti-inflammatories as "an unauthorized use of government funds" was "preposterous" and "any []fair-minded jury could reasonably find for the non-moving party." (*Id.* at 10, citation omitted.) He asserts the "COVID excuses fail," because his impairment was an "clearly emergent." (*Id.* at 13-15; *see also id.* at 19-20.) In addition, Plaintiff argues that Moore's error in ordering the MRI for the wrong knee resulted in damages given the delay. (*Id.* at 16-17.) Plaintiff questions the magistrate judge's review of the evidence and asserts the Court should reject many of the evidentiary findings. (*See generally id.* at 16-20.) Plaintiff concludes Moore exhibited deliberate indifference through the treatment provided—or lack of treatment—and caused him damages. (*Id.* at 21-24.)

### III.     Discussion and Analysis

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009). Because Plaintiff objected to each of the findings of the magistrate judge, the Court reviewed the entirety of the matter. However, the analysis below is focused only upon the argument and evidence necessary to

determine whether there is a genuine dispute as to any *material* fact, as required under Rule 56 of the Federal Rules of Civil Procedure.  Towards that end, the Court disregards arguments and objections that are irrelevant to the analysis.

### A.    Filing of Surreplies

"Neither the Local Rules nor the Federal Rules provide the right to file a surreply."  *Kamali v. Stevens*, 2022 WL 2119024, *1 (E.D. Cal. June 11, 2022).  Nevertheless, "district courts have the discretion to either permit or preclude a surreply."  *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016) (citing *U.S. ex rel. Meyer v. Horizon Health Corp*., 565 F.3d 1195, 1203 (9th Cir. 2009)). Leave to file a surreply is appropriate where new arguments or evidence is raised in a reply.  *See Garcia*, 195 F. Supp. 3d at 1134 (indicating a surreply may be permitted where mew issues, arguments, or evidence are raised in a reply brief; *Kamali*, 2022 WL 2119024, at *1 ("new arguments in [a] reply brief" constitute "a valid reason" for the filing of a surreply [citation omitted]).

As an initial matter, Plaintiff's status as a *pro se* litigant does not grant him leave to file any pleadings he wishes.  The Court informed Plaintiff that he must familiarize himself with the Local Rules and Federal Rules of Civil Procedure at the inception of this case and neither include provisions for surreplies.  *See Kamali*, 2022 WL 2119024, at *1.  On the other hand, the Local Rules explicitly state: "After a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval…"  Local Rule 230(m).

Plaintiff's contention that he waived a hearing and thus should be permitted to file the surreplies is contradicted by the record.  This matter was classified by the Court as a "Prisoner Civil Rights" case, to which certain procedures are applied.  For example, under this classification, motions are "submitted upon the record without oral argument unless otherwise ordered by the Court."  Local Rule 230(l).  The Court informed Plaintiff of this procedure in its "First Informational Order in Prisoner/Civil Detainee Civil Rights Case," and indicated "[a]ll pre-trial motions will be submitted for decision based solely upon the written papers and without a hearing."  (Doc. 5 at 5, citing Local Rule 230(l).)  Thus, Plaintiff's assertion that he "waived" oral arguments is unavailing.

Finally, Plaintiff fails to show the surreplies were necessary to address "new arguments" made by the defendants.  Although Plaintiff suggests the Government made new arguments regarding his

1  disabilities and the propriety of tolling in its reply brief, a review of the record demonstrates *Plaintiff*

2  raised the issue of his disability and tolling under 28 U.S.C. § 2401(a) in his opposition.  The

3  Government was merely responded to the argument made.  (*See* Doc. 50 at 4 [Plaintiff's opposition,

4  asserting that under Section 2401(a), "[t]he action of any person under legal disability or beyond the

5  seas at the time the claim accrues may be commenced within three years after the disability ceases"

6  [emphasis omitted]; Doc. 52 at 2-3 [the Government's reply, arguing the provision is inapplicable].)

7  Because Plaintiff did not identify "new arguments" or legal issues raised in the reply brief by his

8  opponent, he fails to demonstrate a valid reason for filing a surreply.  *See Garcia*, 195 F. Supp. 3d at

9  1134.  The magistrate judge did not err in declining to consider Plaintiff's surreplies.

10      **B.    Claim under the FCTA**

11      The FTCA imposes statutes of limitations for civil actions and tort claims against the United

12  States.  28 U.S.C. §§ 2401(a), (b).  The Ninth Circuit determined the provisions of Section 2401(a)

13  applies to "non-tort claims brought against the United States."  *Booth v. United States*, 914 F.3d, 1206

14  (9th Cir. 2019).  On the other hand, the provisions of Section 2401(b) govern tort claims against the

15  Government.  *Id.*; *see also* 28 U.S.C. §§ 2401(b).

16          1.    Timeliness

17      Pursuant to the FTCA, "A tort claim against the United States shall be forever barred unless it

18  is [1] presented in writing to the appropriate Federal agency within two years after such claim accrues

19  or [2] unless action is begun within six months after the date of mailing, by certified or registered mail,

20  of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).

21  Plaintiff presented his "Claim for Damage, Injury, or Death" to the Bureau of Prisons.  (Doc. 48-4 at

22  4-108.)  The Western Regional Office Counsel responded by informing Plaintiff that the claim was

23  received on January 11, 2021, and identified as Administrative Claim No. TRT-WRX-2001-02085.

24  (*Id.* at 110.)  The BOP Western Regional Office Counsel notified Plaintiff, by certified mail, that

25  Claim No. TRT-WRX-2001-02085 was denied on March 8, 2021.  (*Id.* at 112, 114.)  This notice

26  informed Plaintiff that he was "afforded six months from the date of the mailing of this letter via

27  certified mail within which to bring suit in the appropriate United States District Court."  (*Id.* at 112.)

28  The express language constitutes a notice of final denial under Section 2401(b).

9

1    Plaintiff argues the six-month period under Section 2401(b) began to run either (1) when he

2    responded to the denial by certified mail on July 14, 2021, or (2) he received a letter from the warden

3    on June 8, 2021.  (Doc. 65 at 1-2.)  However, Plaintiff's contentions fail.  Section 2401(b) does not

4    contemplate responses to a denial letter or extend the time for such.  Doing so could result in a situation

5    in which a claimant may extend the filing deadline in perpetuity by mailing responses at any time to the

6    agency.  Furthermore, the identified letter from the warden does not address Administrative Claim No.

7    TRT-WRX-2001-02085.  (*See* Doc. 45-9 at 4.)  Rather, the warden addressed Plaintiff's "Request for

8    Administrative Remedy"—which Plaintiff presented to the institution, seeking compassionate release

9    on May 25, 2021—identified by the warden as Administrative Remedy No. 1082245-F1.  (*Id.* at 4; *see*

10   *also* Doc. 45-12 at 3-4.)  Importantly, a "Request for Administrative Remedy" presented to an

11   *institution* is not a tort claim presented to an *agency* under the FTCA.  *See* 28 U.S.C. § 2671; *see also*

12   *Morgan v United States*, 2025 WL 561575, at *3 (11th Cir. Feb. 20, 2025) (the plaintiff's "request for

13   an administrative remedy that he filed under the Administrative Remedy Program was not a tort

14   claim").  Indeed, Plaintiff's own exhibits acknowledge that a Request for Administrative Remedy,

15   Form BP-9 . . . is appropriate for filing at the *institution.*"  (*See* Doc. 45-9 at 5 [emphasis added].)  The

16   warden's denial of Plaintiff's request for compassionate release is irrelevant to the tort claim made to

17   the BOP.

18       Because the BOP notified Plaintiff of the final denial of Administrative Claim No. TRT-WRX-

19   2001-02085 by certified mail on March 8, 2021, Plaintiff was required to file any action in the district

20   court within six months, or no later than September 8, 2021. Plaintiff filed this action a month later, on

21   October 8, 2021.  (Doc. 1.)  Therefore, unless Plaintiff carries the burden to show tolling is

22   appropriate, his claim is "forever barred."  28 U.S.C. § 2401(b).

23                   2.    Tolling

24       Plaintiff contends the tolling provision of Section 2401(a) applies because he is disabled.

25   However, as discussed above, Section 2041(a) does not apply to *tort* actions.  *Compare* 28 U.S.C. §§

26   2401(a) *with* 28 U.S.C. § 2401(b).  As a result, the Ninth Circuit explicitly rejected the same argument

27   Plaintiff now makes. *See Booth*, 941 F.3d at 1206 ("We therefore reject Booth's argument that the

28   tolling provision in subsection (a) should apply to claims covered by subsection (b).")  Consequently,

the Court declines to address the arguments related to the extent of Plaintiff's physical and mental disabilities, as the tolling provision does not apply.

Plaintiff also asserts he is entitled to equitable tolling, particularly asserting that his medical issues prevented him from filing, and he "was an inmate in COVID lockdown and quarantine for several months without so much a pen and paper to even compose a timely complaint with." (Doc. 65 at 2-3 [emphasis omitted]; *see also id.* at 7, 9.) Plaintiff's alleged inability to file documents due to medical issues and lockdown is plainly contradicted by his litigation history and his ability to prepare other documents, which the Court is permitted to consider. *See Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (considering the petitioner's ability to prepare other filings during the relevant period to determine whether equitable tolling should be applied). During the six-month period while the FTCA statute of limitations was running—between March 8, 2021, and September 8, 2021—Plaintiff prepared and/or submitted the following[1]:

- May 7, 2021 – "Notice to the Court that its Order Was Ignored by Mendota FCI" (*Gelazela v. White*, Case No. 1:21-cv-0002-DAD-HBK (E.D. Cal.) [Doc. 11])

- May 7, 2021 – "Inmate Request to Staff for Release under the CARES Act" (Doc. 45-12 at 1 [Pl's MSJ, Exh. U], indicating the request included "100 pages")

- May 18, 2021 – "Request for Administrative Remedy" to the Warden for release under the CARES Act. (Doc. 45-12 at 3 [Pl's MSJ, Exh. U], indicating the submission included a "102 page package")

- June 8, 2021 – "Regional Administrative Remedy Appeal" for release under the CARES Act (Doc. 45-12 at 5 [Pl's MSJ, Exh. U], and indicating the submission included a "103 page package" to support the request for compassionate release)

- June 9, 2021 – "Objections to Findings and Recommendations" (*Gelazela v. White*, Case No. 1:21-cv-0002 [Doc. 14])

- June 10, 2021 – "Motion/Petitioner for Release to Home Confinement" (*Gelazela v. United States*, Case No. 8:20-cv-01799-DO (C.D. Cal) [Doc. 12, 118 pages])

- June 12, 2021 – Addendum to BP-9 (Doc. 45-14 at 44-45 [Pl's MSJ, Exh. W])

---

[1] A court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is generally known or "can be accurately and readily determined" from indisputably reliable sources. Fed. R. Evid. 201. Thus, "courts may take judicial notice of documents filed in other court proceedings" or on its own docket. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984-85 (E.D. Cal. 2012). The Court takes judicial notice of the dockets and relevant filings in *Gelazela v. White*, Case No. 1:21-cv-0002-DAD-HBK (E.D. Cal.); *Gelazela v. United States*, Case No. 8:20-cv-01799-DO (C.D. Cal); and *Gelazela v. Santa Ana Police Dep't*, Case No. 8:21-cv-01126-HDV-DFM (C.D. Cal.). To the extent the Court cites Plaintiff's representations made in the documents, judicial notice is not taken of the facts to establish them as true.

- June 24, 2021 – "Civil rights complaint" initiating a new lawsuit (*Gelazela v. Santa Ana Police Dep't*, Case No. 8:21-cv-01126-HDV-DFM (C.D. Cal.) [Doc. 1]) and "Application to Proceed In Forma Pauperis by a Prisoner" [Doc. 2])_

- July 9, 2021 –"Central Office Administrative Remedy Appeal" (Doc. 45-12 [Pl's MSJ Exh. U], indicating the appeal included a "104 page package")

- July 26, 2021 – "Claim for Damages" submitted to City of Mendota (Doc. 45-14 at 1-54 [Pl's MSJ Exh. W])

- July 29, 2021 – "Motion for Continuance," requesting an extension of time to file an amended complaint (*Gelazela v. Santa Ana Police Dep't*, Case No. 8:21-cv-01126 [Doc. 5])

- July 30, 2021 – "Rebuttal to Government's opposition Release" (*Gelazela v. United States*, Case No. 8:20-cv-01799 [Doc. 15, 15 pages])

- August 12, 2021 – "First Amended Complaint" in *Gelazela v. Santa Ana Police Dep't*, Case No. 8:21-cv-01126 [Doc. 9])

Plaintiff offers no explanation for how the various circumstances he identifies—such as his *pro se* status, COVID lockdowns, lack of law library access, and medical issues—made it impossible for him to file a timely FTCA claim in this Court but did not impair his ability to prepare these other substantial legal documents. Indeed, Plaintiff not only initiated a different civil action with *Gelazela v. Santa Ana Police Dep't.*, Case No. 8:21-cv-01126-HDV-DFM (C.D. Cal.), but also prepared an amended complaint during the relevant period. Moreover, as Plaintiff told Central District at the time he prepared the amended complaint without access to the library: "we have been on full lock-down without access to the legal law library, printer or copier for the last ten days, so I hastily had to prepare the enclosed amended complaint and am putting it in the mailbox today … ." (Case No. 8:21-cv-01126-HDV-DFM, Doc. 7 at 1.)  Thus, it appears the various lockdowns and the lack of library access did not thwart Plaintiff from filing a complaint—or even an amended complaint—as he now suggests.

On these facts, the Court is unable to find that Plaintiff diligently pursued the issues presented in his tort claim *or* that an "extraordinary circumstance stood in his way and prevented timely filing," as required for equitable tolling.  *See Smith v. Davis,* 953 F.3d 582, 588 (9th Cir. 2020) (internal quotations omitted); *see also Ramirez*, 571 F.3d 998.

### C.    Merits of the Eighth Amendment claim

To establish a claim under the Eighth Amendment for inadequate medical care, a prisoner must show the mistreatment rises to the level of "deliberate indifference to serious medical needs" to

constitute cruel and unusual punishment. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for Eighth Amendment inadequate medical care requires the plaintiff to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wonton infliction of pain" and (2) "the defendant's response to the need was deliberately indifferent." *Id.* (internal quotations omitted). As the magistrate judge determined, it is undisputed that Plaintiff had "a serious medical need." Thus, the Court must only determine whether Plaintiff carries the burden to establish deliberate indifference, and whether there is a material dispute of fact concerning this factor. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference is established only when the defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [defendant] should have been aware of the risk, but was not, then the [defendant] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

A difference of opinion about the necessity or extent of medical treatment does not amount to a constitutional violation. *Toguchi*, 391 F.3d at 1060. Although Plaintiff clearly disagrees with Moore's decision to decline another knee brace—more than eight months after surgery—this disagreement does not establish deliberate indifference. *See Franklin v. State of Oregon, State Welfare Division*, 662 F.2d 1337, 1344 (9th Cir. 1981). Furthermore, as the magistrate judge observed, the medical evidence Plaintiff submitted did not show he was directed to replace the first knee brace after three months. To the extent Plaintiff maintains the unidentified surgeon orally instructed him to change the brace, the magistrate judge did not err in disregarding this hearsay. *See, e.g., Gress v. Smith*, 2018 WL 6421254, at *29 (E.D. Cal. Dec. 5, 2018) (finding on summary judgment, a "plaintiff's hearsay statement that a physician … ordered a CT scan cannot be credited" without supporting evidence, such as "a

1    declaration from the physician or a copy of such order or medical record"); *Meza v. Solana County*

2    *Custody Division/Medical*, 2011 WL 66332, at *2 (E.D. Cal. Jan. 7, 2011) (where the plaintiff

3    presented a "hearsay recounting of a conversation with [his physician]," the Court found an "absence

4    of proof" for his Eighth Amendment claim on summary judgment).

5         In addition, Plaintiff does not show deliberate indifference through the delays in treatment,

6    including from the initial MRI order on the wrong knee.  Although Moore erred by ordering the MRI

7    on the wrong knee, Plaintiff shows no evidence the error involved the requisite culpability.  *See, e.g.,*

8    *Fernandez-Morales v. Gutierrez*, 2023 WL 3918732, at *2-3 (D. Nev. June 8, 2023) (granting

9    summary judgment in favor of the defendant physician where the plaintiff asserted the physician

10   ordered the wrong tests and provided the wrong treatment, because there was no evidence of deliberate

11   indifference).  As the magistrate judge explained, "medical malpractice" or negligence is insufficient

12   to establish a violation of the Eighth Amendment.  *See Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir.

13   2002) ("medical malpractice does not constitute cruel and unusual punishment") (citation omitted); *see*

14   *also Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir. 1990) (even gross negligence is insufficient

15   to establish a constitutional violation).

16        Even still, Plaintiff fails to show the delays—including the delay in sending him outside of the

17   facility during the COVID-19 pandemic— were harmful.  It is undisputed the medical record shows

18   Plaintiff was not sent outside the facility due to the pandemic, and he was aware of this reported reason.

19   (*See* Doc. 45-5 at 10 [Exh. C]; Doc. 45-14 at 16 [Exh. W]; *see also* Doc. 49-2 at 8, ¶ 38.)  Plaintiff does

20   not identify any evidence that his knee injury was "emergent" or required immediate treatment, which

21   may undermine Moore's decision.  Importantly, courts have determined that delays attributed to the

22   COVID-19 pandemic do not establish deliberate indifference by prison officials absent such evidence.

23   *See, e.g., Perkins v. Brown*, 2025 U.S. App. LEXIS 6671 at *9, 2025 WL 880532 at *3 (7th Cir. Mar.

24   21, 2025) (finding summary judgment in favor of the defendant on the plaintiff's Eighth Amendment

25   claim was proper where "no evidence undermine[d] statements in [the] medical records attributing the

26   delay to the COVID-19 pandemic" and the plaintiff did not present "evidence for a jury to find that it

27   was outside the bounds of medical professionalism to determine that COVID-19 concerns outweighed

28   his need for medical care"); *Gardiner v. Corizon Health, Inc.*, 2025 U.S. App. LEXIS 6453, at *6-7

14

1  (6th Cir. Mar. 19, 2025) (delays in additional tests and surgery did not amount to deliberate

2  indifference where "much of the delay was attributable to the COVID-19 pandemic, not the

3  defendants" and affirming summary judgment in favor of the defendant medical professionals).

4        Ultimately, as the magistrate judge determined, Plaintiff fails to identify evidence supporting a

5  conclusion that Moore had the requisite culpable mental state in the challenged actions.  Plaintiff only

6  offers speculation—not *evidence*— to suggest Moore was not exercising medical judgement and

7  instead acted in a manner that disregarded an excessive risk to Plaintiff's health.  Because Plaintiff fails

8  to identify admissible evidence to support his claim for deliberate indifference, summary judgment in

9  favor of Moore is appropriate.  *See Celotex Corp*, 477 U.S. at 322 (summary judgment must be granted

10 in favor of a defendant when there is a failure of proof regarding an essential element of a claim).

11 **IV.**    **Conclusion and Order**

12       According to 28 U.S.C. § 636(b)(1), this Court performed a *de novo* review of this case.

13 Having carefully reviewed the entire matter—including Plaintiff's objections— the Court concludes

14 the Findings and Recommendations are supported by the record and proper analysis.  Thus, the Court

15 **ORDERS**:

16      1.    The Findings and Recommendations issued on August 5, 2024 (Doc. 63) are

17         **ADOPTED** in full.

18      2.    Plaintiff's motion for summary judgment (Doc. 45) is **DENIED**.

19      3.    The Government's motion for summary judgment (Doc. 48) is **GRANTED**.

20      4.    Moore's motion for summary judgment (Doc. 58) is **GRANTED**.

21      5.    The Clerk of Court is directed to enter judgment in favor of Defendants and against

22         Plaintiff, and to close this case.

23

24 IT IS SO ORDERED.

25    Dated:   **March 29, 2025**

26                      UNITED STATES DISTRICT JUDGE

27

28